In Equity.

LEWIS ANDERSON et als. *vs.* R. FRANCIS PARKER et als.

Somerset.    Opinion July 7, 1906.

*Skowhegan and Bloomfield.   Phrase "As Now Constituted" in P. & L. Laws, 1861, c. 24, Construed.   Town Meetings.   Same and Votes Passed, held Legal. Private and Special Laws, 1861, c. 24.*

The present town of Skowhegan was incorporated in 1861, by the Private and Special Laws of 1861, chap. 24, by the union of the old towns of Skowhegan and Bloomfield, the former comprising what is now the north side of the river, the latter the south side, including an island.

The Act of 1861 provided that "whenever the new town of Skowhegan shall vote to build a town house, it shall be located on Skowhegan Island unless a majority of each town, as now constituted, shall otherwise decide."

*Held:* that the phrase "as now constituted" was intended to apply not to the inhabitants, but to the geographical limits of the two old towns.

In 1866, five years after the passage of said Act, the two old towns in town meeting legally called, acting separately in accordance with said Act, voted as follows:   "Voted by those that constituted the town of Bloomfield at the time the town was united with the town of Skowhegan, that we consent to have a Town Hall in a place other than on Skowhegan Island." "Voted by those constituting the town of Skowhegan at the time it was united to Bloomfield that we consent to have a Town Hall in a place other than on Skowhegan Island."

*Held:* that under the warrant calling the town meeting of 1866 and the aforesaid votes in pursuance thereof, the town meeting of 1866 and the votes taken in pursuance of the warrants issued therefor were legal, that the statute of 1861 under which they acted, then became a dead letter, and that the old towns are forever barred from having any voice as separate towns, upon the location of any future Town House to be erected in the town of Skowhegan, that the town of Skowhegan, as constituted in August, 1905, when their special town meeting was held, had then and has now full authority to act in the matter of locating and erecting a Town House or Town Hall under any special or general statute then or now existing, with entire independence of chapter 24 of the Private and Special Laws of 1861.

In equity.   On report.   Bill dismissed.

Bill in equity brought by ten taxable inhabitants of the town of Skowhegan, Somerset County, resident within the geographical limits of the old town of Bloomfield — now a part of the town of Skowhegan — under the provisions of paragraph XI of section 6 of chapter 79 of the Revised Statutes, against the municipal officers and inhabitants of the town of Skowhegan to test the legality of a vote passed by the town of Skowhegan at its annual March meeting, 1906, authorizing the purchase by the selectmen of a lot owned by Richard W. Brown of said Skowhegan, on the north side of the Kennebec River in said Skowhegan, for the purpose of erecting a municipal building at some future time, and to restrain the selectmen from carrying into effect a contract with said Brown made in accordance with said vote for the purchase of said lot.

This cause was heard at the March term, 1906, of the Supreme Judicial Court, Somerset County. After the evidence had been taken out, it was agreed to report the case to the Law Court for decision on an agreed statement of facts.

All the material facts fully appear in the opinion.

*Gould & Lawrence,* for plaintiffs.

*Butler & Butler and Forrest Goodwin,* for defendants.

SITTING: WISWELL, C. J., STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

SPEAR, J. This case comes up on the following agreed statement of facts.

Bill in equity to test the legality of a vote passed by the town of Skowhegan at the annual March meeting of 1906, authorizing the purchase by the selectmen of a lot owned by Richard W. Brown of said Skowhegan, on the north side of the Kennebec River in said Skowhegan, for the purpose of erecting a municipal building at some future time, and to restrain the selectmen from carrying into effect a contract with said Brown made in accordance with said vote for the purchase of said lot.

Bill, amendment, and answer to be made a part of the case.

The present town of Skowhegan was incorporated in 1861, by the Private and Special Laws of 1861, ch. 24, by the union of the old towns of Skowhegan and Bloomfield, the former comprising what is now the north side of the river, and the latter the south side, including the island. The act of incorporation was accepted in compliance with its provisions by both the old towns of Skowhegan and Bloomfield, at their respective annual town meetings in 1861.

The old town of Skowhegan, at the time of the act of union owned a town house on Water Street in said town. The town of Bloomfield owned no town house. The old Skowhegan town house sufficed for the purposes of the new town until 1866, and it is agreed that no town house has since been built nor any vote passed looking to the construction of one, until the present controversy arose, except as may be inferred from the following facts:

In 1866 Skowhegan Hall Association, a local private corporation was contemplating the erection of a block, to contain stores, offices and a public hall.

The warrant calling the annual meeting of the voters of the town of Skowhegan that year contained the following articles:

1st. To choose a moderator to govern said meeting.

2nd. To see if the town will vote to exempt from taxes the buildings proposed to be erected by the Skowhegan Hall Association and also to convey to said corporation the present Town Hall and lot in consideration of having a Town Hall in said building and pass all votes necessary respecting the same.

3d. To see if the towns of Skowhegan and Bloomfield, as constituted before the act uniting them was passed, will vote to have their Town House in said hall and pass all votes necessary respecting the same."

The warrant directed the constable to warn the inhabitants of the town of Skowhegan, (this of course was the new town) and was properly posted and returned.

"Under these articles the following votes were passed.

1st. Choose A. W. Wiles moderator who was duly sworn by clerk.

2nd. Voted that the town convey the present Town Hall building and lot to the Skowhegan Hall Association, and also exempt the building proposed to be erected by said corporation from taxes in consideration that said corporation shall grant to the town a perpetual lease of the hall proposed in said building for all town purposes and also a room suitable for a town office free of rent, except as above provided and shall sufficiently guarantee that said hall shall be conveniently fitted up and kept in good repair while the building shall stand.

Voted that the selectmen be a committee to contract with said corporation in order to carry out the purposes of the foregoing vote with power to convey and contract for exemption from taxes as above named and do all other things necessary and proper to accomplish the said purpose.

3d. Voted by those that constituted the town of Bloomfield at the time the Town was united with the town of Skowhegan, that we consent to have a Town Hall in a place other than on Skowhegan Island.

Voted by those constituting the town of Skowhegan at the time it was united with Bloomfield that we consent to have a Town Hall in a place other than on Skowhegan Island."

So much of the act of 1861 as applies to the present case is found in the following quotation. " Whenever the new town of Skowhegan shall vote to build a Town House, it shall be located on Skowhegan Island, *unless a majority of each town as now constituted,* shall otherwise decide."

The phrase, "as now constituted" was intended to apply, not to the inhabitants, but to the geographical limits of the two old towns. That is, if new territory had been added before a vote upon this question was taken, the voters living thereon could have had no voice in deciding it. This act, however, required that a majority vote of those living upon the territory of each of the old towns should, in some way, be ascertained before the location of the town house therein alluded to, could be moved. But the act of 1861 failed to prescribe any method of warning the inhabitants, dwelling upon the territory of these two old towns, respectively, for separate town meetings, in which

the contemplated votes might be taken.    Nor do the Revised Statutes, generally, provide for the calling of any such meeting.    Neither did the old towns, having lost their separate organizations in the formation of the new town, retain any power within themselves to act upon this or any municipal matter.    The legislature, therefore, having omitted to provide any method of ascertaining a majority vote of the inhabitants of these old towns, in separate meetings, must be presumed to have left the manner of thus determining such vote to the exercise of a fair and reasonable discretion on the part of the old towns, acting together, in their municipal capacity, as citizens of the new town.    No other way was open.    This was also the early interpretation adopted by the towns themselves as manifested by what they did.    For, in a little over five years after the passage of the act of union, the voters within the geographical limits of the old towns, acting in their corporate capacity as the new town of Skowhegan, recognized this presumption and issued a warrant for a town meeting to be holden on the 24th day of March, 1866, to act upon the several articles therein contained.    And they did act upon them in the precise manner contemplated by the statute, so far as the vote upon the vital question of changing the location of the town house was concerned.    The record shows that those who constituted the town of Bloomfield at the time the two towns were united, took a vote by themselves, upon this question, as prescribed by the statute, and that the old town of Skowhegan voted in the same way.    Thus they voluntarily and understandingly and, so far as appears, without a dissenting voice, acted upon this vital question.

In view of the above statute, the interpretation given to it by the people themselves soon after its passage, and the manner of acting under the call, we are unable to discover any good reason for declaring the method of calling the town meeting 1866 illegal, or the votes passed therein invalid.

But the complainants go further and say that, even if the call of this town meeting should be held to be legal, article 2, above quoted, did not relate to a change of the location of the town house but to the disposal of certain town property and "of having a town hall in said building;" that is, the building proposed to be erected by the

Skowhegan Hall Association; and that article 3 was to see if they would "vote to have their town house in said hall."

The statute under which this warrant was issued should be construed liberally. It was not intended to restrict the action of the people but to facilitate it. It applies only to this particular case, and must be construed with reference to the facts and circumstances connected with it, so far as ascertainable. When once legally acted upon it became functus officio. The very purpose of the statute shows that its authors contemplated that, at some future day, the location of the proposed town house, which at this time may have been central, should be changed. The legislature did not intend to limit the action or the people to a particular kind of structure which might be called a "town house," so much as to secure the location of some central place for the assembly of the town meeting. That they intended any distinction between the terms "town house" and "town hall" is very improbable.

Such distinction if it exists at all is very technical. The chief, and apparently the only consideration animating the phraseology of this act, was not the *name* of the structure to be erected, but the *location* of it. They made no provision whatever for the kind of building to be used. It is evident that they employed the word "town house" in the broadest sense, for the purpose of specifying the place where the people should assemble to transact the business of the town in its regular and special town meetings. If the act had employed any other phrase to designate such place its meaning would be unchanged. The people have but little concern as to where the town officers transact the town business, whether at their homes or elsewhere. Their chief interest centers in the location of the place where the people, from the various parts of the town, are obliged to assemble in order to attend the town meeting. They care but little what the structure in which they assemble is, or how it looks, provided it is so located as to best accommodate the greatest number. Upon this paramount feature, location, the people acted in 1866 with unanimous voice. And, while they did not technically follow the language of the statute authorizing them to act, they did it substantially, voluntarily, understandingly, and we think sufficiently.

The complainants further say that the vote does not comply with the statute for the following reasons: first, the language used is "consent" not "decide;" second, the vote is to "have" not to "build;" third, the thing to be had is a "town hall," not a "town house." To be sure the vote above passed is expressed in the terms "we consent," but an analysis of all the votes shows that they pretty effectually decided. It will be observed that the vote under the second article was on condition "that said corporation shall grant the town a perpetual lease of the hall proposed in such building for the town purposes." Therefore they consented to have this town hall forever "in a place other than on Skowhegan Island." If this was not a decision, it was at least decisive. It forever removed the location of the town house from Skowhegan Island.

Again they say that the vote is "to have" and not "to build." To have is a most comprehensive term. It would include not only the meaning of the phrase "to build" but any other method which might have been proposed for the establishment of a town house or town hall for the transaction of the town business. The use of the phrase "to have" shows too, that they used the proper words to carry into effect their intention, "to have" and not "to build." We have already alluded to the fact that no distinction was intended by this act between the use of the phrases "town house" and "town hall."

The case also shows that all the people of these two old towns acquiesced in the action of the town meeting of 1866 for forty years, with apparent satisfaction, until the arrangement under which they had lived so long was terminated by fire.

To allow the narrow and technical construction of the above statute which the complainants now invoke is not only not required by a fair interpretation of the language, itself, but would thwart the manifest intentions of these two old towns intelligently and voluntarily expressed, lived up to for more than forty years, and work a necessary hardship upon the people of the present town without accomplishing any corresponding good.

There is another ground upon which we think the complainants are now precluded from claiming any rights under the statute in

question. The above act was undoubtedly passed for the benefit of the town of Bloomfield, as it was geographically situated before the union. As under the present issue the provision of the act affected them, alone, and with respect to the location of a future town house, only, they could unquestionably waive this special favor by any legal action on their part disclosing an intention to do so. Therefore the complainants have relinquished all the rights, to which they now claim to be entitled under the statute, by express waiver thereof.

Our final conclusion is that the town meeting of 1866 and the votes taken in pursuance of the warrant issued therefor, were legal; that the statute of 1861 under which they acted, then became a dead letter, and that the two old towns are forever barred in having any voice as separate towns, upon the location of any future town house to be erected in the town of Skowhegan; that the town of Skowhegan, as constituted in August, 1905, when their special town meeting was held, had then, and has now, full authority to act in the matter of locating and erecting a town house or town hall under any special or general statute then or now existing, with entire independence of chapter 24 of the Private and Special Laws of 1861.

In view of the above decision it becomes unnecessary to discuss the question of contract raised by the complainants in their brief.

The entry must be,

> *Bill dismissed with costs.*
>
> *Case remanded to the court below for a decree in accordance with this opinion.*